COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-228-CV

IN THE INTEREST OF L.K.M., A MINOR CHILD 

------------

FROM THE 231ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Munroe Justin M. appeals the trial court’s order terminating his parental rights to his biological daughter, L.K.M.  We affirm.

L.K.M. is the five-year-old daughter of Munroe and Sara Johnston.  Munroe filed an original petition in suit affecting the parent-child relationship on October 19, 2004, seeking to be appointed L.K.M.’s sole managing conservator.  Sara responded with a counterpetition requesting the court to appoint her as L.K.M’s joint managing conservator with primary possession and the right to decide domicile, with standard visitation rights for Munroe.  On January 5, 2005, the trial court’s associate judge ordered the preparation of a social study by Family Court Services and ordered possession of L.K.M. to alternate between Munroe and Sara every two weeks. 

After several months, Sara filed an amended counterpetition alleging that Munroe had a history of committing family violence and requesting that the court appoint her as L.K.M’s sole managing conservator.  On November 30, 2005, Sara filed her first supplement to the amended counterpetition adding new tort claims against Munroe and his mother, Sofia Els M., including claims of assault and false imprisonment, conspiracy to commit assault and false imprisonment, and interference with custody.  She also asserted claims against Munroe for intentional infliction of emotional distress and slander by filing a false report of abuse or neglect.  Sara requested the court to issue a protective order against Munroe and to terminate his parental rights to L.K.M.

The next day, December 1, 2005, the trial court heard the parties’ case.  Both Munroe and Sara appeared in person and were represented by attorneys.  The judgment, signed on March 29, 2006, and titled “Agreed Order of Termination,” states that a court reporter made a record of the testimony and contains the following findings:

The court finds that each of the parties hereto have voluntarily entered into this 
Agreed Order of Termination
 and that each of the parties consent, stipulate and agree to all of the terms and conditions as stated in this 
Agreed Order of Termination
 and each party states that they are entering into this 
Agreed Order of Termination
 voluntarily and that neither of them is under any type of coercion, duress and/or undue influence.

In its order, the trial court terminated Munroe’s parent-child relationship to L.K.M., appointed Sara as L.K.M.’s sole managing conservator, and recited that Sara had nonsuited the torts pleaded in her first supplement to the amended counterpetition.  This order is signed by the trial court judge, L.K.M.’s attorney ad litem, and Sara and her attorney, but it is not signed by Munroe or his attorney.  Munroe filed a motion for new trial, which was overruled by operation of law on June 12, 2006, seventy-five days after the order was signed.  
See
 
Tex. R. Civ. P.
 329b(c).

Although the motion for new trial had already been overruled by operation of law, the trial court signed an order denying Munroe’s motion for new trial on June 29, 2006.  The order awards Sara $6,000 in attorney’s fees plus additional attorney’s fees for a successful defense of any appeals.  
It also orders Sara and Munroe each to pay $2,500 in attorney’s fees to L.K.M.’s attorney ad litem.  Munroe now appeals.

A. Claim of Indigence

Munroe complains in his fifth issue that the trial court erred by denying him pro bono counsel after he became indigent.  Munroe filed an affidavit of indigence on November 9, 2006, a month after we had granted his attorney’s motion to withdraw on October 9, 2006, and after we had twice contacted him on September 20, 2006, and again on October 11, 2006, about his failure to pay the court reporter for preparation of the reporter’s record.
(footnote: 2)
 We directed the trial court to hold a hearing to determine whether Sara and the court reporter received timely notice of Munroe’s affidavit of indigence.  The trial court held the hearing on December 8, 2006, and found that Munroe had failed to give Sara timely notice of the filing of his affidavit of indigence and that the court clerk had failed to give timely notice of the filing to the court reporter.  Accordingly, we permitted Sara and the court reporter to bring out-of-time contests to Munroe’s affidavit.  Ten days later, the trial court held a hearing on the contests; the court sustained the contests to Munroe’s affidavit of indigence, ordered that Munroe must pay or give security for the costs of appeal, and ordered that the court reporter was not required to prepare the appellate record without prepayment.  The trial court further denied Munroe’s request for appointed counsel.

Munroe challenges the trial court’s order on appeal, arguing that he sufficiently established his claim of indigence to the trial court.  The test for indigence is whether a preponderance of the evidence shows that the party would be unable to pay costs “if he really wanted to and made a good-faith effort to do so.” 
Griffin Indus., Inc. v. Thirteenth Court of Appeals
, 934 S.W.2d 349, 351 (Tex. 1996) (orig. proceeding) (quoting 
Allred v. Lowry
, 597 S.W.2d 353, 355 (Tex. 1980)).  If a contest is filed, the party who filed the affidavit of indigence must prove the affidavit’s allegations.  
Tex. R. App. P.
 20.1(g).  We review the trial court’s ruling on an indigency determination under an abuse of discretion standard.  
White v. Bayless
, 40 S.W.3d 574, 576 (Tex. App.—San Antonio 2001, pet. denied).

At the conclusion of the December 8 hearing on the notice issue, the trial court informed all parties that it would hold another hearing to consider evidence relating to the contests and instructed Munroe to bring to that hearing copies of his income tax returns for the years 2004 and 2005 as well as any evidence of income earned in the year 2006, including bank statements. Despite this explicit instruction from the court, Munroe did not bring any of the documents requested, nor did he bring any other evidence besides his own self-serving testimony to establish his claim of indigence.  The court found that Munroe had failed to meet his burden of establishing indigence, observing that “the allegations or statements that [Munroe] made were not supported by any documentary evidence, whatsoever, even though I had specifically instructed him to bring documents that would shed some light of his financial condition.”

We hold that, because Munroe failed to support his claim of indigence with evidence of his lack of income or assets, the trial court did not abuse its discretion by concluding that Munroe did not meet his burden of proving by a preponderance of the evidence that he would be unable to pay costs “if he really wanted to and made a good-faith effort to do so.” 
Griffin Indus
., 934 S.W.2d at 351; 
see also
 
Tex. R. App. P.
 20.1(g).  Furthermore, because Munroe was not indigent, the trial court’s denial of his request for appointed counsel did not violate his right to due process.  
Cf. 
Tex. Fam. Code Ann.
 § 
107.013 (a)(1) (Vernon Supp. 2007) (requiring, in a termination suit filed by a governmental entity, the appointment of an attorney for an 
indigent 
parent who responds in opposition to the termination);
 M.L.B. v. S.L.J.
, 519 U.S. 102, 128, 117 S. Ct. 555, 570 (1996) (holding that due process concerns prohibit the dismissal for nonpayment of record preparation costs of an 
indigent 
mother’s appeal of an order terminating her parental rights);
 Lassiter v. Dep’t of Social Servs.
, 452 U.S. 18, 31-32, 101 S. Ct. 2153, 2162 (1981) (holding that the trial court must make the decision of whether due process calls for the appointment of counsel for 
indigent
 parents in termination proceedings on a case-by-case basis).  We overrule Munroe’s fifth issue.

B. Lack of Reporter’s Record

After the trial court sustained the contests to Munroe’s claim of indigence, we again notified him on January 5, 2007, that if he failed to pay for the reporter’s record on or before February 5, 2007, this court may consider and decide only those issues that do not require a reporter’s record for a decision.  
See 
Tex. R. App. P.
 37.3(c).
 
 Munroe never paid for the reporter’s record, so we informed him on February 8, 2007, that this court would consider and decide only those issues that do not require a reporter’s record for a decision.  
See id.

Munroe argues that 
he did provide the reporter’s record of trial as an exhibit to his appellate brief.  This exhibit was struck by court order, however, and will not be considered by the court in this appeal.  Furthermore, we cannot consider documents attached as appendices to briefs and must consider a case based solely upon the record filed.  
WorldPeace v. Comm’n for Lawyer Discipline
, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (refusing to consider excerpt from a reporter’s record that appellant attached to its brief when no official reporter’s record was before the court).  The remainder of Munroe’s issues require a reporter’s record for their resolution, so we are unable to evaluate most of his complaints on appeal; to the extent that we can evaluate his issues, we do so on the record before us.

1. 
Agreed Order of Termination

Munroe argues in his first issue that the trial court erred by signing the termination order because Munroe agreed to termination under duress; he claims that he was “blackmailed” into agreeing to the termination by the “malicious/false” tort claims in Sara’s counterpetition, financial pressure, and fear of deportation.  Without a reporter’s record, we cannot evaluate his claims of duress; instead, the only evidence in the record on this issue is the trial court’s finding that “each party states that they are entering into this 
Agreed Order of Termination
 voluntarily and that neither of them is under any type of coercion, duress and/or undue influence.”
(footnote: 3)  When 
a reporter’s record is not requested, we indulge every presumption in favor of the trial court’s findings.  
Bryant v. United Shortline Inc. Assurance Servs., N.A.
, 972 S.W.2d 26, 31 (Tex. 1998); 
Peacock v. Bradshaw,
 145 Tex. 68, 194 S.W.2d 551, 554 (1946).
  Accordingly, we do not consider Munroe’s allegations of malicious or false claims and duress.  We overrule Munroe’s first issue.

In his second issue, Munroe complains that the trial court erred by relying on unsubstantiated hearsay evidence from an unreliable witness contained in a “Case Report,” which presumably is the social study that the trial court ordered Family Court Services to prepare.  Again, because we have no reporter’s record of the trial, we must presume that any reliance on this report by the trial court was proper.  
See Bryant
, 972 S.W.2d at 31.  We overrule Munroe’s second issue.

Munroe further challenges in his sixth and seventh issues the legal and factual sufficiency of the evidence to support the trial court’s findings that there was clear and convincing evidence establishing statutory grounds for termination and showing that termination was in the child’s best interests, complaining that termination must be based on a written, not oral, relinquishment of parental rights.

While it is true that a parent’s voluntary relinquishment of a child can constitute legal grounds for termination, it is not the only ground for termination prescribed by statute.  
See
 
Tex. Fam. Code Ann.
 § 161.001 (Vernon Supp. 2007).  Further, the termination order shows that the trial court did not rely upon Munroe’s oral relinquishment to establish grounds for termination; instead, the court found clear and convincing evidence of other grounds for termination in its judgment—that Munroe knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, and that he engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child.  
See id.
 § 161.001(1)(D), (E).  The trial court also found by clear and convincing evidence that termination of the parent-child relationship between Munroe and L.K.M. was in L.K.M.’s best interest.  
See id.
 § 161.001(2).

In conducting a sufficiency review, 
our inquiry is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated subsections (D) and (E)
 of section 161.001(1) and that the termination of the parent’s parental rights would be in the best interest of the child.  
In re J.P.B.
, 180 S.W.3d 570, 573 (Tex. 2005);
 
In re C.H.
, 89 S.W.3d 17, 28 (Tex. 2002).  
Because there is no reporter’s record showing the evidence presented at trial, we must presume that the evidence supported the trial court’s termination findings.  
See Bryant
, 972 S.W.2d at 31.  We overrule Munroe’s sixth and seventh issues.

2. 
Allegations of Unethical Counsel

In his third issue, Munroe makes various allegations of unethical conduct on the part of opposing trial counsel, none of which are substantiated by the record.  To obtain reversal, Munroe must first show that the trial court made an error of law.  
See
 
Tex. R. App. P.
 44.1(a).  The record does not show that the complained-of errors occurred.  We overrule Munroe’s third issue.

3. 
Disqualification/Recusal of Trial Court Judge

In his fourth issue, Munroe complains that the trial court judge should have been disqualified or recused from presiding over his case.  Munroe alleges that, during the hearing on his motion for new trial, the trial court judge acknowledged that he and Sara’s counsel were business partners and good friends who biked together on weekends and during vacations.  He claims that he did not move for the judge’s recusal at that point because he “could not afford to repeat the whole scenario in another court by another Judge.”  Recusal may be waived if it is not raised by a proper motion.  
McElwee v. McElwee
, 911 S.W.2d 182, 186 (Tex. App.—Houston [1st Dist.] 1995, writ denied).  Because Munroe claims that he was aware of facts raising the recusal issue but failed to bring the issue in the trial court, he has waived his right to complain of the judge’s failure to recuse himself.  
See id.

Unlike recusal, however, disqualification cannot be waived.  
Id.
  If a judge is disqualified under the Texas Constitution, he is without jurisdiction to hear the case; therefore, any judgment he renders is void and a nullity.  
Id.
 (citing 
Buckholts ISD v. Glaser
, 632 S.W.2d 146, 148 (Tex. 1982)). Munroe argues that the judge should have disqualified himself due to his personal and business relationship with Sara’s counsel and due to his being connected to Sara’s counsel by affinity.  Again, however, Munroe has not provided us with a record of the proceeding at which these alleged statements regarding the disqualification issue were made.  

When the issue of a judge’s disqualification is first raised on appeal, the fact of disqualification must be determined from the record.  
Sun Exp. & Prod. Co. v. Jackson
, 729 S.W.2d 310, 314 (Tex. App.—Houston [1st Dist.] 1987) (op. on reh’g), 
rev’d on other grounds
, 783 S.W.2d 202 (Tex. 1989).  If the fact of disqualification does not appear from the record, unverified allegations will not suffice on appeal.  
Id.
  Nothing in the record establishes the bare, unverified contentions of the judge’s relationship and affinity with Sara’s counsel that Munroe asserts for the first time on appeal.  Therefore, we overrule Munroe’s fourth issue.

4. 
Denial of Motion for New Trial

Finally, in his eighth issue, Munroe complains that the trial court violated his due process rights of “natural justice and the right to be heard” by denying his motion for new trial.  We review a trial court’s denial of a motion for new trial for an abuse of discretion.  
In re R.R.
, 209 S.W.3d 112, 114 (Tex. 2006).  In his motion for new trial, Munroe asserted that he agreed to the termination of his parental rights under duress and as a result of blackmail and extortion based on the claims in Sara’s new counterpetition.  He also contended that there was no statutory basis for terminating his parental rights.

We have already addressed and overruled these complaints on appeal, and Munroe provides us with no record from the hearing on the motion for new trial that would add anything further to our analysis.  Accordingly, we hold that the trial court did not abuse its discretion by denying Munroe’s motion for new trial, and we overrule his eighth issue.

Having overruled all of Munroe’s issues on appeal, we affirm the trial court’s termination order.

PER CURIAM

PANEL F: MCCOY, J.; CAYCE, C.J.; and LIVINGSTON, J.

DELIVERED: January 10, 2008

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Sara complains that this affidavit of indigence was not timely filed because Munroe did not file it in the appellate court with or before the notice of appeal, nor did he seek an extension of time to file his affidavit of indigence. 
See
 
Tex. R. App. P.
 20.1(c)(1), (3).  However, the Texas Supreme Court has held that a failure to file an affidavit of indigence with or before the notice of appeal is merely a formal defect, which the appellant is allowed a reasonable time to correct.  
See
 
Springer v. Springer
, No. 06-0382, 2007 WL 3230314, at *1 (Tex. Nov. 2, 2007).

3:
We do recognize that Munroe did not sign the agreed order, possibly indicating that he did not agree to its terms and conditions.  But although the order was not signed until March 29, 2006, it was actually rendered in open court on December 1, 2005.  A party has the right to revoke his consent to an agreed judgment at any time 
before
 the rendition of judgment, but not 
after
 rendition.  
See Arriaga v. Cavazos
, 880 S.W.2d 830, 833 (Tex. App.—San Antonio 1994, no writ) (citing 
Quintero v. Jim Walters Homes, Inc.
, 654 S.W.2d 442, 444 (Tex. 1983)).  Accordingly, any attempt by Munroe to back out of the parties’ agreement by failing to sign the agreed order in March—nearly four months after judgment was rendered—was too late.  
See id.